**PARAGON PODIATRY LABORATORY, INC., Plaintiff–Appellant,**

v.

**KLM LABORATORIES, INC., Defendant–Appellee.**

**No. 91–1455.**

United States Court of Appeals, Federal Circuit.

Jan. 26, 1993.

William H. Drummond, Fulwider, Patton, Lee & Utecht, Long Beach, CA, argued, for plaintiff-appellant. With him on the brief was Vern Schooley.

James E. Brunton, Glendale, CA, argued, for defendant-appellee.

Before NIES, Chief Judge, ARCHER, Circuit Judge, and COHN, District Judge.*

PER CURIAM.

Paragon Podiatry Laboratory, Inc., appeals from the grant of KLM Laboratories, Inc.'s motion for summary judgment by the United States District Court for the Central District of California. The district court held Paragon's U.S. Patent No. 4,686,993 (the '993 patent) invalid under 35 U.S.C. § 102(b) (1988) and unenforceable by rea-

son of the applicant's inequitable conduct before the Patent and Trademark Office (PTO). We affirm the grant of summary judgment.

## I.

### Background

Paragon, as assignee of the '933 patent for a low profile functional orthotic,[1] brought suit against KLM for infringement of the '933 patent. KLM denied the claim of infringement and filed counterclaims against Paragon seeking, *inter alia,* a declaratory judgment that the '993 patent is invalid and unenforceable and an award of attorney fees. Paragon denied the allegations of the counterclaims. Upon KLM's motion for summary judgment on its declaratory judgment counterclaims, the district court held the '933 patent invalid under 35 U.S.C. § 102(b) and unenforceable by reason of the inequitable conduct of the patent applicant and his attorney before the PTO. The district court, in its opinion, reserved ruling on whether the case is exceptional under 35 U.S.C. § 285 (1988) and, accordingly, whether KLM is entitled to attorney fees. The district court also noted that KLM's counterclaims for common law unfair competition remain undecided. Paragon appeals the district court's summary judgment with respect to both invalidity and unenforceability.[2]

## II.

### Summary Judgment Standard

Summary judgment is properly granted where there are no genuine issues of material fact and the moving party is entitled to judgment on undisputed facts and the correct application of the law. Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties

---

\* Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. An orthotic is a device which is worn inside shoes to provide better support for the wearer's feet. A functional orthotic is an orthotic which is shaped and constructed to correct an abnormal foot condition, *i.e.,* it causes the bones,

joints, muscles, and ligaments of the foot to change from abnormal positions and, over time, to assume natural positions.

2. The district court entered a final judgment under Fed.R.Civ.P. 54(b) rejecting Paragon's claim for patent infringement and upholding KLM's declaratory judgment counterclaims.

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The proper inquiry, therefore, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252, 106 S.Ct. at 2512. However, the evidence must be viewed in the light most favorable to the party opposing summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). In other words, "[s]ummary judgment is authorized when it is quite clear what the truth is," *Hodosh v. Block Drug Co.,* 786 F.2d 1136, 1141, 229 USPQ 182, 186 (Fed. Cir.) (citing *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944)), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986), and the law requires judgment in favor of the movant based upon facts not in genuine dispute.

On appeal, we are not bound to give deference to the district court's grant of summary judgment, but must make an independent determination that the standards for summary judgment have been met. *Vas–Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir. 1991).

### III.

#### On–Sale Bar

■ Section 102(b) provides, in relevant part, that a person may not obtain a patent if "the invention was ... on sale in this country[ ] more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Under long standing judicial interpretation, a product embodying the patented invention, which is sold or offered for sale more than a year before the application's filing date, may escape the statutory bar where such sale was primarily for a bona fide experimental purpose to perfect the invention, rather than for commercial exploitation. *A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1311, 7 USPQ2d 1881, 1884 (Fed.Cir. 1988); *Pennwalt Corp. v. Akzona, Inc.,* 740 F.2d 1573, 1581, 222 USPQ 833, 838 (Fed.Cir.1984). Thus, any sales of the later patented product outside of the grace period must be merely incidental to the primary purpose of experimentation.[3] *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 839, 221 USPQ 561, 567 (Fed.Cir.1984) (citing *In re Theis,* 610 F.2d 786, 793, 204 USPQ 188, 194 (CCPA 1979)).

In this case, the district court held the '933 patent invalid under section 102(b) by reason of commercialization outside of the grace period. The court based this holding upon Paragon's sale and advertising for sale of functional orthotic devices, under the product name Omniflex, which included all of the elements of the '933 patent claims, more than one year before the '933 patent application's filing date of July 26, 1985 (the critical date therefore being July 26, 1984) and its conclusion that Paragon's activities were not "for legitimate experimental purposes." Specifically, the court made the following statement respecting the evidence:

> The record shows that prior to the critical date, plaintiff published price lists and sales letters offering for sale the orthotic described in the patent in suit. None of these documents refer in any way to testing. Further, plaintiff has admitted that about three hundred of the said orthotics were sold prior to the critical date without maintaining any control over the orthotics and without restriction of any kind being placed upon their use.

Paragon does not challenge the court's above statement of the facts. Indeed, it

---

**3.** There are not, however, two separable issues, *i.e.,* "Was the invention 'on sale'?" and then, "Was the sale an experimental use?" The correct statement of the sole issue is "Was the invention 'on sale' within the meaning of section 102(b)?" *See TP Lab., Inc. v. Professional Positioners, Inc.,* 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.) (addressing public use), *cert. denied,* 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984).

admits that approximately 300 Omniflex units were sold prior to mid-July 1984 and that those units embodied the '933 invention. Paragon only challenges the propriety of the court's making a conclusion on summary judgment that the sales were not for experimental purposes.

In response to the summary judgment motion, Paragon had submitted an affidavit of the inventor, Michael T. Grumbine, averring that he considered the sales as being not for profit but for experimentation respecting the structure of the orthotic to determine if the heel was sufficiently fused to the shell so as to be "unitary" as required by the claims.[4] He further averred that sales were promoted to small volume or new customers so as to minimize the detrimental effects on customer relations if the devices were not satisfactory, and that it was common practice to distribute new orthotics before large scale commercialization in order to get feedback on their performance by receiving complaints and by making random phone calls to purchasers.

"[T]he ultimate question of patent validity is one of law." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966). Whether an invention was "on sale" within the meaning of section 102(b) is itself a subsidiary question of law. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed.Cir.1990); *U.S. Envtl. Prods., Inc. v. Westall*, 911 F.2d 713, 715, 15 USPQ2d 1898, 1900 (Fed.Cir.1990); *UMC Elecs. Co. v. United States*, 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir.

1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1480, 2 USPQ2d 1364, 1366 (Fed.Cir.1986); *Barmag Barmer Maschinenfabrik AG*, 731 F.2d at 835–40, 221 USPQ at 564–68. While resolution of the issue of experimental use is fact driven, a fact is not material if the legal conclusion does not turn on how that fact is resolved. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

■ Paragon asserts that the inventor's affidavit averring that the sales were experimental is sufficient, in itself, to raise a genuine issue of *material* fact. We disagree. The fact that an inventor had an intent to experiment in making the sale need not be overcome or disputed to invoke the statutory bar. Such intent is merely a fact to be taken into account in resolving the ultimate legal question. Moreover, as a factor in the ultimate conclusion, we have held, "[T]he expression by an inventor of his subjective intent to experiment, particularly after institution of litigation, is generally of minimal value." *TP Lab.*, 724 F.2d at 972, 220 USPQ at 583. Further, we have held that the assertion of experimental sales, *at a minimum*, requires that customers must be made aware of the experimentation. *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1072, 22 USPQ2d 1025, 1029

---

**4.** Claim 1 recites:

A low profile functional orthotic for supporting a patient's foot from a bottom plane defined by the upwardly facing surface of the insole of a shoe and comprising

a rigid unitary contoured supportive plastic shell formed with forefoot, arch and heel portions having respective downwardly facing forefoot, arch and heel plantar surfaces and formed on the top side with respective upwardly facing forefoot, arch and heel support surfaces cooperating together to form a contoured foot support surface, which arch portion being raised above said bottom plane to form such arch support surface elevated above said bottom plane, said forefoot support surface tapering continuously downwardly and forwardly from said arch support

surface to intersect such bottom plane, such heel support surface tapering rearwardly and downwardly from such arch support surface and being dished out centrally to form raised lateral and medial walls cooperating to define therebetween a heel cup having a bottom wall formed with a thickness at its lower point of no more than $1/16$th of an inch whereby such shell may be formed of plastic to form such foot support surface to afford the desired support for such foot and such forefoot and heel portions may then be ground off on their bottom sides to form said forefoot and heel plantar surfaces for disposition in said bottom plane to thus afford positive foot support while presenting a low profile within such shoe.

(Fed.Cir.1992); *In re Dybel*, 524 F.2d 1393, 1401, 187 USPQ 593, 599 (CCPA 1975).

■ Here, Paragon admits that it did not inform the ordering doctors that the Omniflex unit was an experimental device. To the contrary, sales letters sent to doctors stated, "The Omniflex is the *culmination* of extensive research and *exhaustive clinical testing*" (emphasis added). Sales letters and manuals were distributed to potential customers stating that the Omniflex had a "unitized polypropylene post," the object of the supposed testing. *See In re Brigance*, 792 F.2d 1103, 1108, 229 USPQ 988, 991 (Fed.Cir.1986); *In re Smith*, 714 F.2d 1127, 1135, 218 USPQ 976, 983 (Fed. Cir.1983); *Harrington*, 815 F.2d at 1481 n. 3, 2 USPQ2d at 1366 n. 3. The devices were sold with a "lifetime guarantee."

"When sales are made in an ordinary commercial environment and the goods are placed outside the inventor's control, an inventor's secretly held subjective intent to 'experiment,' even if true, is unavailing without objective evidence to support that contention." *LaBounty*, 958 F.2d at 1072, 22 USPQ2d at 1029 (citing *Brigance*, 792 F.2d at 1108, 229 USPQ at 991). As previously noted by this court, "The Supreme Court has indicated that for an assertion of experimental use to have merit, it must be clear that the inventor kept control over his invention in the course of its testing." *In re Hamilton*, 882 F.2d 1576, 1580, 11 USPQ2d 1890, 1893 (Fed.Cir.1989) (citing *City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 136, 24 L.Ed. 1000 (1877)). As with other indicia of experimental use, Paragon's control of the

devices after their sale is wholly lacking in the present case.

Paragon sold the Omniflex units to the trade as completed devices without any disclosure to either doctors or their patients of their involvement in experimentation or testing, and without any control being retained by the inventor over the distributed units during the alleged "testing." Standing alone, the evidence of the inventor's secretly held belief that the devices which were sold might not be durable and thus unsatisfactory to consumers is legally insufficient to avoid the legal conclusion of a section 102(b) statutory bar in the face of the objective evidence.[5]

Paragon asserts that the inventor's affidavit swearing that he was experimenting was supported by corroborative evidence, namely: (1) the patent attorney's declaration that he was informed during the pendency of the application, long before the lawsuit, that the sales were for testing purposes; and (2) the declaration of a Paragon officer that the sales were limited and that he called on podiatrists to monitor results of use and to check out complaints. At best, the first affidavit gives some credence to the inventor's averments because his statements were "not litigation driven" but, as indicated, the inventor's expressed intent of experimentation has, in any event, been assumed for purposes of deciding the motion. The second declaration does not state any activity not normally associated with a regular commercial sale. The receipt and processing of customer complaints does not transform unrestricted sales made outside the grace period into

---

**5.** Paragon appears to be arguing along the lines that the invention was not reduced to practice because the inventor was not satisfied that it would work for its intended purpose. *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1445, 223 USPQ 603, 607 (Fed.Cir.1984). However, even if that were true, reduction to practice is not a requirement of the on-sale bar. *UMC Elecs.*, 816 F.2d at 656, 2 USPQ2d at 1471.

Further, the thrust of the on-sale inquiry is whether the inventor thought he had a product which could be and was offered to customers, not whether he could prevail under the technicalities of reduction to practice appropriate to determining priority of invention under interference law. *UMC Elecs.*, 816 F.2d at 655, 657, 2

USPQ2d at 1470–72. Here, Paragon went even further and affirmatively represented to doctors and their patients that the Omniflex units were "exhaustively" tested. Further testing simply to determine if the manufacturer/licensee had made the device sufficiently durable—not a requirement of the claim—is not the type of testing constituting testing to determine if the device as claimed would work for its intended purpose. *See Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261, 1264, 19 USPQ2d 1156, 1158 (Fed.Cir.1991); *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1563, 4 USPQ2d 1210, 1214 (Fed.Cir.1987); *Harrington Mfg.*, 815 F.2d at 1481, 2 USPQ2d at 1366–67.

permissible sales activity. Neither piece of evidence sets out any material fact that is disputed. Thus, Paragon's allegedly corroborative evidence does not alter the non-experimental nature of the sales from the viewpoint of the purchasing doctors or the public. *See Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 499, 25 USPQ 2d 1290, —— (Fed.Cir.1992).

■ Paragon argues that the sales being limited to low volume purchases objectively shows that the sales were intended to be for testing purposes. We disagree. The limited extent of sales may be relevant to determining whether the scope of the inventor's testing was appropriate but only where other evidence indicates that the sales were restricted and controlled as appropriate for experimental use. Here, Paragon represented to doctors and their patients that the Omniflex units were fully tested devices. Had they been presented as experimental devices, there would have been no reason to be concerned about customer relations if the devices proved unsatisfactory. In any event, the limited extent of sales does not negate the bar. Even a single sale outside the grace period may be sufficient to invoke section 102(b). *See A.B. Chance Co.*, 854 F.2d at 1311, 7 USPQ2d at 1884 ("A single offer to sell is enough to bar patentability whether or not the offer is accepted."). Clearly, there is no license to test the invention by commercial sales outside the grace period.

Paragon argues that neither the bare offers to sell the Omniflex, nor the failure to state in the sales literature that the Omniflex use was experimental, nor the failure of the inventor to retain control over the devices after sale, *ipso facto* precludes avoidance of the on-sale bar. Similarly, Paragon asserts that neither the failure to obtain confidentiality agreements, nor the acceptance of payment from customers, standing alone, means the on-sale

bar is satisfied. However, these considerations do not stand alone. They exist in combination. And when further combined with other factors, such as the inventor's failure to keep test records, the entire surrounding circumstances point to only one possible legal conclusion—that the sales of the Omniflex were commercial in nature and fall within the statutory bar. None of the objective evidence indicates that the sales of the Omniflex units were for anything other than a primarily commercial purpose. The inventor's averment that his sales were for experimental purposes amounts to no more than a conclusory legal opinion which rests on a misunderstanding of the nature of activities which are legally permissible outside the grace period.

We, therefore, conclude that there is no *material* fact dispute respecting the commercial nature of the sales and that the district court correctly held KLM must prevail on its invalidity counterclaim as a matter of law. *See Anderson*, 477 U.S. at 255–56, 106 S.Ct. at 2513–14.

## IV.

### Inequitable Conduct

The district court also granted KLM's motion for summary judgment declaring the '933 patent unenforceable by reason of the patent applicant's inequitable conduct before the PTO.[6] The district court based its holding upon (1) the applicant's failure to disclose to the patent examiner the previously discussed sales of the Omniflex orthotic, and (2) the applicant's submission of deceptive affidavits in response to the patent examiner's request for affidavits from a "disinterested third party" under 37 C.F.R. § 1.132 (1991).[7]

Paragon's appeal centers around the intent element of inequitable conduct. On appeal, Paragon argues that it was error for the district court to make a holding of

---

6. This issue is not mooted by our decision holding the patent invalid in view of KLM's motion for attorney fees. *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1466, 7 USPQ2d 1325, 1329 (Fed.Cir.1988).

7. Section 1.132 states:

> When any claim of an application ... is rejected on reference to a domestic patent which substantially shows or describes but does not claim the invention, ... affidavits or declarations traversing these references or objections may be received.

inequitable conduct without specifically finding an intent to deceive the PTO and that genuine issues of material facts were raised respecting wrongful intent which preclude summary judgment on either allegation.

## A.

### *The District Court Decision*

 As an initial matter, we disagree with Paragon's contention that the district court did not find an intent to deceive the PTO as a matter of law on the evidence of record. In holding the '993 patent unenforceable, the district court stated:

> The Court recognizes that, for a patent to be held unenforceable by reason of inequitable conduct, it must be shown by clear and convincing evidence that there was an intent to deceive the PTO. While intent is a factual inquiry, and the standard of proof is high, the entrance of summary judgment is not, as a consequence, automatically precluded....
>
> Intent can only be determined upon consideration of all the facts and circumstances involving the conduct in question. In finding that the plaintiff has failed to raise a triable issue as to inequitable conduct, the following observations are of particular import.

Slip opinion at 3 (citations omitted).

Paragon's argument appears to be that because the district court's opinion does not contain the words "I find that the applicant had an intent to deceive the PTO," a finding of intent is lacking. This argument elevates form over substance and ignores reality. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 809, 15 USPQ2d 1481, 1484 (Fed.Cir.1990) ("The district court need not have expressed its determination in the particular phrase 'intent to deceive.' "). The district court specifically noted that intent to deceive the PTO is a required element of inequitable conduct and, further, requires a high level of proof. To reach the conclusion of inequitable conduct under the law, as stated by the district court itself, the district court necessarily had to have found an intent to deceive the PTO. This is not,

as implied by Paragon, a case where the district court did not recognize intent to deceive as a necessary element of the charge of inequitable conduct. *See Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1573–74, 18 USPQ2d 1001, 1008 (Fed.Cir.1991). Rather, the district court stated and applied the appropriate law and concluded that the evidence raised no genuine issue respecting either element of inequitable conduct.

## B.

### *The Element of Culpable Intent*

 Paragon next argues that, even if the district court did make a finding of intent to deceive, such a finding required the resolution of genuine issues of material fact and, therefore, was not amenable to summary judgment. Paragon's appeal does not raise an issue with respect to the materiality of the misrepresentations, nor does Paragon suggest that the district court abused its discretion in weighing the level of wrongful intent with the materiality of the misrepresentations. *See Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1439–40, 17 USPQ2d 1834, 1838 (Fed.Cir.1991); *Manville Sales Corp.*, 917 F.2d at 551, 16 USPQ2d at 1592–93. Accordingly, the sole issue is the correctness of the district court's conclusion that there was no genuine issue respecting the inventor's intent to deceive or mislead the PTO.

To satisfy the intent to deceive element of inequitable conduct, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown Medical Consultants Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (en banc resolution of conflicting precedent). However, "smoking gun" evidence is not required in order to establish an intent to deceive. *See Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422, 10 USPQ2d 1682, 1686 (Fed.Cir.1989) ("Intent need not, and rarely can, be proven by

direct evidence."). Rather, this element of inequitable conduct, must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct. *Id.*

While our precedent urges caution in the grant of summary judgment respecting a defense of inequitable conduct, summary judgment is not foreclosed. For example, we have said that "[a] summary judgment that a reputable attorney has been guilty of inequitable conduct, over his denials, ought to be, and can properly be, *rare* indeed." *Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422, 7 USPQ2d 1158, 1161 (Fed.Cir.1988) (emphasis added). In *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 228 USPQ 32 (Fed.Cir. 1985), we said:

> Although the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finder to evaluate all the facts and circumstances in each case. Such an evaluation is *rarely* enabled in summary proceedings.

*Id.* at 1577, 228 USPQ at 35 (citation omitted and emphasis added). Nevertheless, the grant of summary judgment in a patent suit is appropriate if the criteria for summary judgment are satisfied. *Hodosh,* 786 F.2d at 1141, 229 USPQ at 186. On the other hand, "If the facts of materiality or intent are *reasonably* disputed, the issue is not amenable to summary judgment." *Baker Oil Tools,* 828 F.2d at 1566, 4 USPQ2d at 1215 (emphasis added).

Thus, in this case, we must decide whether the evidence respecting culpable intent makes the fact reasonably inferable either way, or whether the evidence is so one-sided that the factual issue of intent may be decided as a matter of law. *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. And, in looking to the record for evidence of a genuine issue respecting intent to deceive the PTO, all of the circumstances, including those indicative of good faith, must be considered. However, merely conclusory statements or completely insupportable, specious, or conflicting expla-

nations or excuses will not suffice to raise a *genuine* issue of fact.

### C.
### *No Right to Jury Trial on Inequitable Conduct*

 Finally, before addressing the merits of the district court's ruling on inequitable conduct, we must correct repeated statements by Paragon that it was deprived of a jury trial on this issue. A number of Supreme Court cases do refer to intent as an issue to be resolved by a jury. *See, e.g., Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 699, 9 L.Ed.2d 738 (1963). However, on closer analysis, it is clear that the Supreme Court statements have no applicability in the context of an equitable defense. The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide. *See Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the characteristic of the overall action."); *United States v. Louisiana,* 339 U.S. 699, 706, 70 S.Ct. 914, 917, 94 L.Ed. 1216 (1950) (Seventh Amendment applicable to actions at law not equity actions). As this court held upon extensive analysis in *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1211–13, 2 USPQ2d 2015, 2017–19 (Fed.Cir.1987), the decision respecting inequitable conduct is a discretionary decision to be made by the judge on his or her own factual findings. Thus, a disputed finding of intent to mislead or to deceive is one for the judge to resolve, not the jury, albeit not on summary judgment if there is a genuine dispute. A patentee has no right to a jury trial respecting the factual element of culpable intent as part of the defense of inequitable conduct. *Id.*

### V.
### *Grounds for Inequitable Conduct*
### A. Deceptive Affidavits

 We turn first to the charge of inequitable conduct respecting the submission

of deceptive affidavits during prosecution of the application and conclude that on the evidence of record the trial judge could hold there was no genuine dispute respecting the factors of materiality or intent. Further, the facts rationally support the ultimate conclusion and, thus, the judge committed no abuse of discretion in sustaining the defense of inequitable conduct.

The submission of deceptive Rule 132 affidavits with intent to mislead is supported by the following evidence. At the conclusion of a personal interview with Paragon's counsel to discuss an obviousness rejection, the examiner placed a summary of the interview in the official PTO file which states, "No agreement as to whether or not this is unobvious in view of all relevant facts. Applicant will provide a [Rule] .132 affidavit from a disinterested third party on this point and the overall low profile—re prior art. Determination of obviousness to be made after considering affidavit." Three affidavits were submitted by the applicant from professionals in the field who attested to the advantages of the invention over prior art devices. It is now admitted that each of the affiants held stock in Paragon and one of them or all three had been consultants for which they received remuneration. These facts were not disclosed to the examiner. Further, there was not merely omission of the information of these interests. Each affiant averred with what now conveys the impression of deliberate artfulness in light of their ownership interest in the patent that:

> I have not been in the past employed by nor do I intend in the future to become employed by Paragon Podiatry Laboratories, a corporation which I understand is the assignee of the interest in the above captioned patent application.

We conclude, as did the district court, that the inference of an intent to deceive the PTO is strongly supported by the submission of these deceptive affidavits. The materiality of these submissions in securing allowance of the claims is not disputed.

Paragon argues that any intent to mislead may not be "presumed" [sic, inferred] from the mere failure to disclose known highly material information, citing *Manville Sales Corp.*, 917 F.2d at 552, 16 USPQ2d at 1593. While a correct view of the law, that truism does not apply here. The inference arises not simply from the materiality of the affidavits, but from the affirmative acts of submitting them, their misleading character, and the inability of the examiner to investigate the facts. The natural consequence of these acts was to lead the examiner to believe that the affiants were "disinterested" parties, and the patentees were successful in that effort.

KLM having made a *prima facie* case of inequitable conduct by satisfying both elements thereof, the burden shifted to Paragon to come forward with evidence which would require reassessment of the validity of the defense. To that end, Paragon submitted affidavits by the inventor and by the attorney who filed and prosecuted the application attesting, *inter alia*, to their good faith and lack of deceptive intent. Paragon asserts these averments in themselves preclude summary judgment.

If a bare declaration of lack of intent to mislead where a false material affidavit is submitted to the PTO were to raise a genuine issue, summary judgment would be precluded in all cases except where no response at all is made. However, such declaration amounts to no more than would a conclusory denial in a pleading which under Fed.R.Civ.P. 56 is insufficient to create a genuine issue.[8] *See First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Petersen Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1551, 222 USPQ 562, 570 (Fed.Cir.1984). The affiant must at least state facts supporting a plausible justification or excuse for the misrepresentation.

---

**8.** Rule 56(e) specifically provides in-part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Mr. Grumbine's affidavit in this case states that he selected the affiants because "it would be unrealistic for [him] to expect [he] could obtain a statement from a competitor complimentary of Paragon's product," that although the affiants held stock and/or received discounts on devices "in return for making themselves available for consultation," he "did not consider them interested parties in the sense that their opinions should not be given full weight" because they were not "employed by Paragon." His attorney averred that he drafted the Rule 132 affidavits and that he understood the three affiants' opinions were given "without remuneration for the statements made."

We need not quibble about whether a "consultant" is or is not "employed" by a company. The representation to the PTO that the affiants were not employed presents a classic example of a half truth, and the explanation that the attorney understood no remuneration was paid for their statements is nonresponsive. None was a "disinterested" party in any recognized sense of the word. Further the gratuitous averment that each "understood" Paragon was an assignee of the patent also implies they had no connection with their own company. That averment serves no other purpose.

Paragon makes other arguments attempting to separate the knowledge of the inventor of the relationship of the affiants from that of the attorney. This argument of a Chinese Wall, if legally sufficient at all, lacks evidentiary support. The attorney never asserted he was unaware of their relationship. The inventor merely stated he could not remember telling the attorney. The attorney himself was silent on this point. Thus, viewing the evidence of record in the light most favorable to the non-movant, we find none which raises a genuine issue of fact respecting the deceptive intent inferred from the submission of deceptive, if not outright false, affidavits to the PTO.

We would add that summary judgment here was not based merely on affidavits from the parties. The record also contains answers to interrogatories and deposition testimony from the attorney and others on this matter, all to the same effect as the affidavits opposing the motion for summary judgment. Thus, the nonmovant had ample opportunity to present its justification for the statements in the Rule 132 affidavits. There has been no rush to judgment and there has been no suggestion that additional evidence is available that might change the result. Paragon's argument against summary judgment, while couched in terms of raising a fact issue, is in essence against the conclusion from the undisputed evidence. However, we reach the same conclusion as the district court that the record leads to only one conclusion. Inequitable conduct was established by the submission of deceptive Rule 132 affidavits with intent to mislead or deceive the PTO.

B. Failure to Disclose Commercial Sales [9]

■ As further ground for inequitable conduct, the district court included the patentee's failure to disclose to the examiner the pre-critical date commercial sales of the patented device. Paragon asserts that the record shows at least a factual issue respecting the element of intent to deceive the examiner by not disclosing these sales.

■ A party charging inequitable conduct may make a *prima facie* case by showing an unexplained violation of the duty of candor. In a responsive denial, the patentee may set forth facts which show that under the particular circumstances as the applicant and/or his attorney perceived them, an inference of wrongful intent should not be drawn. Facts showing, for example, their good faith mistake in the law or the facts or mere negligence may be enough to raise a genuine dispute.

9. Although we have affirmed the finding of inequitable conduct with respect to the deceptive affidavits, we address this second ground for inequitable conduct as it may have a cumulative effect on the district court's determination of an exceptional case in connection with KLM's motion for attorney fees.

■ Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the PTO. The concealment of sales information can be particularly egregious because, unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing the information on his own.

■ On appeal, Paragon attempts to excuse the attorney's failure to disclose the pre-critical date sales to the examiner by arguing that during prosecution of the application the attorney believed it was entirely correct for him to decide that the sales were experimental and not disclose them.[10] As this argument was not presented to the district court and has no support in the record by way of testimony or affidavit, it cannot possibly establish, even if true, that the district court erred in finding no genuine issue respecting intent. The argument is improper in this appeal.[11] Moreover, the patent attorney's affidavit to the trial court took a quite different approach. In that document, the patent attorney states only that the invention was not reduced to practice prior to August 1984.[12] Reduction to practice, however, is not required for application of the "on sale" bar, *UMC Elecs.*, 816 F.2d at 656, 2 USPQ2d at 1471, and the patent attorney never averred that he believed otherwise. The patent attorney's later deposition testimony takes still another position. He testified "all the facts I had showed [the sales] were experimental" even though he admits that he had seen the promotional material and knew that the sales were unrestricted and that no testing records were maintained. These inconsistent justifications do not raise a genuine issue of good faith.

The prosecution of the patent application in this case, viewed in its entirety, demonstrates an overriding pattern of misconduct sufficient to support the district court's finding of culpable intent.

## VI.

### *Conclusion*

For the foregoing reasons, we affirm the judgment that U.S. Patent No. 4,686,993 is invalid and unenforceable, and remand the case for further proceedings consistent herewith.

AFFIRMED AND REMANDED.

---

**10.** In its brief to this court, Paragon asserts that the patent attorney relied upon *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1583, 226 USPQ 821, 825 (Fed.Cir.1985). Nowhere in the record before the district court does the patent attorney assert reliance upon *Reactive Metals*, nor did he supply an affidavit to that effect. However, in order to avoid potential misreading of *Reactive Metals*, we clarify that *Reactive Metals* does not excuse a patent attorney from disclosing pre-critical date sales to the examiner, based solely upon the inventor's representations, in the face of objective evidence that the sales were commercial in nature. As we stated in *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066,

22 USPQ2d 1025 (Fed.Cir.1992), where the decision of whether or not to disclose sales before the critical date is close, the case should be resolved by disclosure, not by the applicant's unilateral decision. *Id.* at 1076, 22 USPQ2d at 1033.

**11.** This court obtained the entire record before the district court *sua sponte* to review the propriety of this argument.

**12.** In allowing this argument to be made, the district court granted Paragon's motion to withdraw an admission that the invention had been reduced to practice prior to the critical date.