39 F.3d 1196
 34 U.S.P.Q.2d 1808
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Phillip P. ROGERS and Faye Rogers Living Trust and Faye
Rogers, Trustee, Plaintiffs-Appellants,
v.
BAXTER INTERNATIONAL INC., Defendant-Appellee.
 No. 94-1055.
 United States Court of Appeals, Federal Circuit.
 Oct. 5, 1994.
 
 Before NIES, Circuit Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 The Phillip P. Rogers and Faye Rogers Living Trust, along with Faye Rogers, Trustee (collectively, Rogers), appeal from a Partial Summary Judgment, dated June 5, 1992, and an Order and a Final Judgment, each dated September 21, 1993, of the United States District Court for the Northern District of Illinois, civil action no. 91-C-0526. The district court, in granting summary judgment, (i) held Rogers's U.S. Patent Nos. 4,551,146 (the '146 patent), 4,354,490 (the '490 patent), 4,655,762 (the '762 patent), and 4,810,241 (the '241 patent) unenforceable for inequitable conduct; (ii) awarded reasonable attorneys' fees to defendant-appellee, Baxter International Inc. (Baxter), in view of alleged inequitable conduct that rendered this an exceptional case under 35 U.S.C. Sec. 285 (1988); (iii) held certain claims of Rogers's four patents invalid as being anticipated by U.S. Patent No. 4,334 551 (Pfister ); and (iv) held that Baxter's accused products did not infringe, either literally or equivalently, claim 1 in the '146 patent and claim 1 in the '490 patent. For the reasons set forth below, we affirm with respect to non-infringement, and vacate and remand with respect to inequitable conduct, attorneys' fees, and invalidity.
 
 DISCUSSION
 I.
 
 2
 Phillip P. Rogers, now deceased, is the named inventor of the four patents in dispute. Each of the four patents relates to a connector for a Continuous Ambulatory Peritoneal Dialysis (CAPD) system that is used by a person with kidney failure to cleanse his or her blood. The CAPD system is "ambulatory" in the sense that a patient may selectively connect to the dialysis equipment to refresh the cleansing solution via a semi-permanent catheter inserted through the patient's abdominal wall. The claimed invention sought to provide a method of automatically disinfecting the connector between the catheter and the CAPD system each time a connection was made. Claim 1 in the '146 patent, which is representative of the claims on appeal, reads as follows:
 
 
 3
 1. A peritoneal dialysis fluid connecting device comprising;
 
 
 4
 enclosure means;
 
 
 5
 an absorbent packing material in said enclosure means;
 
 
 6
 said absorbent packing material being substantially saturated with a disinfectant solution;
 
 
 7
 a first tube connecting end for supplying a peritoneal dialysis fluid;
 
 
 8
 a second tube connecting end adapted to telescopically mate with and connect to said first tube connecting end;
 
 
 9
 means allowing said first and second tube connecting ends to be telescopically mated inside said enclosure means so that the connecting ends are bathed in said disinfectant solution when the connection is being made and throughout use.
 
 
 10
 The first prototype of the invention made by Mr. Rogers consisted of a pill bottle having a sponge inside and holes for tubes at either end. Although the "pill bottle prototype" no longer exists, Mr. Rogers apparently drew a picture of it in a handwritten invention disclosure document dated January 26, 1979. A drawing of a somewhat different embodiment of the invention was made by Mr. Rogers on February 9, 1979.
 
 
 11
 During prosecution of the '146 patent in the U.S. Patent and Trademark Office (PTO), and after Mr. Rogers had died, the examiner rejected certain of Rogers's claims as being unpatentable over Pfister.[1] In response, on October 18, 1984, Rogers filed a "Declaration Under Rule 131"[2] (signed by Faye Rogers, Phillip Rogers's wife and administrator of his estate) and a "Declaration Under Rule 132"[3] (signed by the attorney who was prosecuting the '146 patent application) to establish the date of the invention as being prior to Pfister's effective date, thereby removing Pfister as a prior art reference.[4] Two statements in the
 
 
 12
 Rule 131 declaration are pertinent to this appeal:
 
 
 13
 2. [T]he invention disclosed and described in the above-identified application was conceived and reduced to practice prior to the filing date [April 30, 1979] of the Pfister patent.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 4. [T]he enclosed Exhibit A was prepared from a model of the invention constructed by the applicant. (emphasis added).
 
 
 17
 The above-referenced Exhibit A, which was attached as part of the Rule 131 declaration, included four figures prepared by a professional draftsman, Joseph Santos. After the Rule 131 declaration was submitted, and apparently in response thereto, the examiner allowed the application.
 
 
 18
 In January of 1991, Mr. Rogers's successors-in-interest sued Baxter, alleging that Baxter's System II Model 5C4211 and System III connection shields infringed certain claims of the patents. Each of the Baxter connection shields consists of a "clam-shell" structure that is clamped around the connection point of the two tubes after they have been interconnected, thus bathing the tubes with disinfectant from a sponge disposed inside the clam-shell.
 
 
 19
 Following a series of oral hearings, the district court held that all four patents were unenforceable due to inequitable conduct during prosecution of the '146 patent. Specifically, the court concluded that the declarations submitted in removing Pfister as a prior art reference were false and were submitted with deceptive intent. With Pfister as prior art, the district court held that the following claims were invalid as being anticipated by Pfister, and entered judgment accordingly:
 
 
 20
 claims 1-4, 6, 7, and 10 of the '490 patent;
 
 
 21
 claims 1 and 4-13 of the '146 patent;
 
 
 22
 claims 5-7 of the '762 patent; and
 
 
 23
 claims 1-3 of the '241 patent.
 
 
 24
 In addition, the district court granted a partial summary judgment of non-infringement, upon concluding that the literal language of claim 1 in the '146 patent and of claim 1 in the '409 patent, when properly interpreted, did not read on Baxter's accused products. With regard to the doctrine of equivalents, the district court held that certain amendments made during prosecution prevented Rogers, by application of prosecution history estoppel, from proving that Baxter's devices infringed the asserted claims equivalently. The district court held, however, that even aside from the issue of prosecution history estoppel, Baxter's accused devices did not infringe Rogers's claims under the doctrine of equivalents because they did not perform substantially the same function in substantially the same way to obtain substantially the same result.
 
 II.
 A.
 
 25
 In deciding whether to grant a motion for summary judgment, a court must first determine whether a genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). A genuine dispute is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the issue in favor of the non-movant. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562, 4 USPQ2d 1793, 1795 (Fed.Cir.1987). In rendering a decision on a motion for summary judgment, the court must "view the evidence presented through the prism of the substantive evidentiary burden" that would inhere at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).
 
 B.
 
 26
 The ultimate determination that a party committed inequitable conduct by supplying misleading information to the PTO, although committed to the discretion of the trial court, is necessarily predicated on establishing the following factual elements by clear and convincing evidence: falsity, materiality, and deceptive intent. See Kingsdown Medical Consultants Ltd. v. Hollister Inc., 863 F.2d 867, 872, 876, 9 USPQ2d 1384, 1389, 1392 (Fed.Cir.1988). In the present case, the district court held that summary judgment of inequitable conduct was warranted for the following reasons: (i) there was no reduction to practice because the pill bottle prototype admittedly leaked, and thus could not be deemed to work for its intended purpose--to provide a "sterile connector"; (ii) the Rule 131 declaration and the drawings in the attached Exhibit A were misleading because they represented that the exact device shown in the drawings had existed, and worked as a sterile connector, prior to the filing date of Pfister; (iii) the representations in the Rule 131 declaration were false and affiants knew them to be false; (iv) the allegedly untrue statements in the Rule 131 declaration were material to the PTO's decision to allow the application; and (v) Rogers's inequitable conduct made this an exceptional case justifying an award of attorneys' fees to Baxter. On appeal, Rogers's challenges to the district court's decision focus on the underlying factual issues involved. In particular, Rogers asserts that the evidence of record does not support the district court's conclusion that the statements in the Rule 131 declaration were false as a matter of law. We agree.
 
 
 27
 An invention is said to be reduced to practice when the device is embodied in tangible form and its practical utility for its intended purpose is demonstrated. Field v. Knowles, 183 F.2d 593, 601, 86 USPQ 373 (CCPA 1950). There is no requirement, however, that the embodiment be in a "commercially satisfactory stage of development" to constitute a reduction to practice. King Instrument Corp. v. Otari Corp., 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985). As noted above, the district court concluded that the intended purpose of Rogers's invention was to provide a sterile connector. Relying solely on the undisputed fact that the pill bottle prototype leaked, the district court concluded that it could not work for its intended purpose and, thus, the statement to the contrary in the Rule 131 declaration was false. This was error. The fact that the pill bottle leaked may or may not constitute some evidence that the prototype connector was not sterile, and thus did not work for its intended purpose. On the record before us, however, we cannot say that leakage per se compels a conclusion of non-reduction to practice. The fact of leakage, taken alone, equally supports a conclusion that the pill bottle prototype merely was not in a "commercially satisfactory stage of development" regardless of its reduction to practice status. In other words, we cannot say that every reasonable trier of fact would conclude that the statement at issue (i.e., the invention had been reduced to practice) had been proven false by clear and convincing evidence. To the contrary, Rogers has submitted affidavits that the pill bottle prototype did, in fact, work for its intended purpose. Accordingly, we do not hold that the pill bottle prototype constituted a reduction to practice, but rather only that the state of the record does not support a summary judgment of no reduction to practice, especially in view of the high burden of proof that would inhere at trial.
 
 
 28
 Similarly, we hold that the record does not support summary judgment regarding the falsity of the declaration statement that "Exhibit A was prepared from a model of the invention constructed by the applicant." The undisputed facts bearing upon the truth of this statement are as follows: (i) the pill bottle prototype was constructed during the first half of 1979; (ii) in July of 1992, Mr. Santos had no recollection, one way or another, whether he based his Exhibit A drawings on a model of the invention; and (iii) Mr. Santos's drawings are very similar in appearance to Mr. Rogers's drawings of February 9, 1979. Although these facts may provide fodder for speculation, we cannot say that they compel the conclusion that Santos's drawings were not "prepared from a model of the invention."
 
 
 29
 For the foregoing reasons, we vacate the district court's grant of summary judgment that the '146 patent, the '490 patent, the '762 patent, and the '241 patent are unenforceable by reason of inequitable conduct. Because we hold that the district court erred in concluding that the declaration statements were false as a matter of law, we do not reach the concomitant elements of materiality and the affiants' intent in making those statements. On remand, both parties should be afforded an opportunity to submit all admissible evidence concerning truth, materiality, and affiants' intent in making those declaration statements. Finally, the basis underlying the district court's conclusion that the attempted enforcement of Rogers's patents rendered this an exceptional case under 35 U.S.C. Sec. 285 no longer exists in view of our holding that the court's decision regarding inequitable conduct cannot stand. Consequently, the award of reasonable attorneys' fees to Baxter is also vacated.
 
 
 30
 Contrary to Baxter's contention, we do not feel that this court's decision in Paragon Podiatry Lab. v. KLM Labs., 984 F.2d 1182, 25 USPQ2d 1561 (Fed.Cir.1993), compels a different result. We see nothing in the facts of the present case that would rise to the level of malfeasance apparent in Paragon Podiatry. Rogers's subsequent admission that its pill bottle prototype leaked does not create an impression that the prior declaration statements were drafted with "deliberate artfulness," 984 F.2d at 1191, 25 USPQ2d at 1569, to avoid telling the truth. Although the fact that the pill bottle leaked may constitute some evidence of the invention's reduction to practice status, it does not necessitate the conclusion that the pill bottle model was not a reduction to practice "in any recognized sense," id., of that term. In other words, in contrast to the situation presented in Paragon Podiatry, we do not feel that "it is quite clear what the truth is," 984 F.2d at 1185, 25 USPQ2d at 1563, in the present case.
 
 C.
 
 31
 Each claim in an issued patent is presumed valid, 35 U.S.C. Sec. 282 (1988), and a party seeking to prove otherwise must establish invalidity by clear and convincing evidence. Diversitech Corp. v. Century Steps Inc., 850 F.2d 675, 677, 7 USPQ2d 1315, 1317 (Fed.Cir.1988). Whether a claim is anticipated by a particular prior art reference, thus rendering the claim invalid under 35 U.S.C. Sec. 102, is a question of fact reviewed for clear error. Id. In ruling upon a motion for summary judgment of invalidity, therefore, a trial court must enunciate the undisputed material facts and conclusions of law upon which the determination of anticipation is based in order to facilitate appellate review.
 
 
 32
 In the present case, the district court stated in conclusory fashion that various claims in Rogers's four patents were invalid as being anticipated by Pfister. Because the district court failed to provide any factual or legal analysis in support of its conclusions of invalidity, we are unable to review the district court's holding in that respect. Consequently, the holding of invalidity of Rogers's claims as being anticipated by Pfister is vacated. On remand, if the district court concludes that Pfister has not been removed as a prior art reference, the court is instructed to make specific findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a) regarding the issue of anticipation by Pfister of Rogers's claims not disposed of by this opinion (e.g., claims 5-7 of the '762 patent).
 
 D.
 
 33
 Determining whether a patent is infringed involves a two-step inquiry: (1) interpreting the claims; and (2) comparing the properly interpreted claims to the accused device. Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). The district court interpreted claim 1 in the '146 patent and claim 1 in the '490 patent as each requiring that "the first and second tube connecting ends be bathed in disinfectant when the connection is being made and throughout use." Using this construction, the district court held that, as a matter of law, Baxter's accused devices did not literally infringe because their "clam-shell" connectors did not "bathe the tube connecting ends when the connection is being made and throughout use." On appeal, Rogers does not contest the district court's ultimate conclusion regarding infringement, assuming that the court's claim interpretation is upheld. Rather, Rogers disputes the underlying interpretation of its claims upon which the finding of infringement is predicated. Rogers asserts that the interpretation of the phrase "when the connection is made" is artificial and unnecessarily narrow in that it erroneously limits the scope of the claims. Rogers contends that the phrase "when the connection is made" should be interpreted as covering any and all procedures that may be required in connecting the two tubes together from start to finish. Using this construction, Rogers continues, Baxter's accused "clam-shell" connectors would infringe the claims because the connection has not been "made" until the clam-shell has been clamped around the previously connected tubes.
 
 
 34
 We disagree and hold that the district court did not err in interpreting Rogers's claims in finding no literal infringement. In reaching this conclusion, we rely on the ordinary and accustomed meaning of the claim language, which is consistent with the usage in the patent specifications. See Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984). Claim 1 in both the '146 and the '490 patents expressly recites, inter alia, first and second tubes, each having a connecting end to be mated together. Claim 1 further recites means in which the "connecting ends are bathed in disinfectant solution when connection is being made and throughout use." We believe that the ordinary meaning of this language is that the connecting ends are bathed at each of two distinct times: (1) just prior to the connection being "completed"--that is, the point at which the two tube ends are in contact and have ceased moving relative to each other, and (2) after the connection has been completed. Clearly, the figures and written description of Rogers's patents are consistent with such an interpretation, and Rogers has identified nothing that would support a contrary conclusion. The connection ends of the tubes in Baxter's connectors, in contrast, are not bathed with disinfectant from the sponge material, if ever, until after the connection has been made by clamping the "clam-shell" structure with the sponge inside around the connected tubes. Consequently, no reasonable trier of fact could conclude that Baxter's accused connectors literally infringed claim 1 in either the '146 or the '490 patent.
 
 
 35
 The district court held that infringement under the doctrine of equivalents was precluded both by (i) application of prosecution history estoppel in view of a particular amendment during prosecution, and (ii) failure to satisfy the function-way-result inquiry used in making equivalence infringement determinations. See, e.g., London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1458 (Fed.Cir.1991). Although Rogers argues on appeal that the district court misconstrued the import of the amendatory language in applying prosecution history estoppel, we find it unnecessary to reach that issue. Instead, we note that Rogers has failed to identify any portions of the evidentiary record that would raise a genuine issue of material fact as to the equivalence between the claimed and accused devices. Moreover, in view of the substantially different "way" in which the claimed and accused devices bathe the connecting tubes with disinfectant, we hold that no reasonable trier of fact could conclude that Baxter's accused products infringe Rogers's claims 1 under the doctrine of equivalents.[5]
 
 
 36
 In sum, the district court erred in granting summary judgment on the issues of inequitable conduct and invalidity. We therefore vacate the grant of summary judgment on those issues and the award of attorneys' fees and remand for further proceedings consistent with this opinion. We affirm, however, the district court's grant of partial summary judgment that Baxter's accused products did not infringe claim 1 in the '146 patent and claim 1 in the '490 patent, either literally or equivalently.
 
 
 37
 Each party shall bear its own costs.
 
 
 38
 NIES, Circuit Judge, dissenting.
 
 
 39
 I would affirm the district court's judgment of unenforceability of the asserted patents. Inequitable conduct during prosecution was proved. However, I conclude the district court abused its discretion in awarding attorney fees against the trustee, Mrs. Rogers.
 
 Inequitable Conduct
 
 40
 The issue of inequitable conduct centers principally on a 37 C.F.R. Sec. 1.131 declaration filed during prosecution of the application which matured into one of the patents in suit, United States patent number 4,551,146 ("the '146 patent"). The declaration was prepared by the inventor's attorney for Mrs. Rogers' signature after her husband, the inventor, died. Mrs. Rogers swore that the subject invention had been "reduced to practice prior to the filing date of Pfister patent no. 4,334,551."
 
 
 41
 The district court held that the only embodiment of the invention before the filing date of Pfister, a crude device fashioned from pill bottles, was not an actual reduction to practice because it did not work as a sterile connector. Appellants did not dispute that the leakage prevented that device from being sterile which was required for the invention to work for its intended purpose. Rather, they argued that the leakage problem in the only embodiment was easily correctable. The court rejected this argument on the understanding that "a reduction to practice must be complete in itself to demonstrate that the invention does work for the purpose intended. What might happen with further adjustments, modifications, or additions is speculative. The point of requiring a reduction to practice is precisely to remove that element of speculation." That statement of the law is correct.
 
 
 42
 Appellants' argument over a commercial embodiment is a red herring. The court did not require a commercial embodiment of the invention; the court required a complete embodiment of the invention and one that worked for its intended purpose. The patented device here is a medical connector for minimizing peritonitis by automatically sterilizing the connection between a bag of dialysis fluid and a catheter which extends into the peritoneal cavity.
 
 
 43
 As an initial matter, contrary to the majority, no embodiment of the claim was ever made. Under Sec. 112, p 6, the "means" language of the claims must be interpreted to cover the disclosed embodiments and equivalents thereof. In re Donaldson Co., 16 F.3d 1189, 1193, 29 USPQ2d 1845, 1848 (Fed.Cir.1994) (in banc ). All of the claims thus require either the disclosed interconnecting structure consisting of the sealing engagement depicted in the drawing or an equivalent thereof which would maintain a seal in accordance with the disclosure. Appellant does not even allege that the pill bottle's friction fit satisfied that limitation of the claim. At a minimum, reduction to practice requires that there be an actual device that embodies all limitations of the claims. UMC Electronics Co. v. U.S., 816 F.2d 647, 652, 2 USPQ2d 1465, 1468 (Fed.Cir.1987), cert. denied, 484 U.S. 1025 (1988) ("Under our precedent there cannot be a reduction to practice of the invention here without a physical embodiment which included all limitations of the claims.").
 
 
 44
 Secondly the device was never effectively tested. The patented apparatus' nature as a medical device, having the potential for serious health implications if it fails to function properly, is not the type of "simple" device contemplated by some of our precedent where a reduction to practice may exist without any testing. See King Instrument Corp. v. Otari Corp., 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985), cert. denied, 475 U.S. 1016 (1986). Rather, the test for an actual reduction to practice of this type of apparatus is that an embodiment containing all elements of the claim must be tested sufficiently to demonstrate that it will actually work for its intended purpose. See Newkirk v. Lulejian, 825 F.2d 1581, 1582, 3 USPQ2d 1793, 1794 (Fed.Cir.1987); and Kimberly-Clark v. Johnson & Johnson, 745 F.2d 1437, 1445, 223 USPQ 603, 607 (Fed.Cir.1984). All of the testimony points the other way here which is not surprising inasmuch as no embodiment with all claim elements was ever made.
 
 
 45
 The testimony of the inventor's son was candid. The son's testimony is that he saw a bag of the dialysis fluid hanging from the door and that the connector of the pill bottle embodiment "leaked all over the place." Further, there is no evidence that that makeshift model was ever used in a dialysis procedure on a patient. Mrs. Rogers testified that her husband was seeking to obtain opinions on whether the invention was medically sound by writing to doctors and talking to nurses. She testified that as of May 7, 1979, her husband still did not know whether the connector was feasible from a medical standpoint or medically sound. Clearly, the inventor was not satisfied that the invention would work prior to the critical date of April 30, 1979, even had there been an embodiment. In late 1981, Glen Dufin testified that the inventor told him there was no functional connector available at that point in time, and that he would not be able to hook up his device and use it on himself (Mr. Rogers required dialysis) in an actual use connection. In sum, there is simply no evidence that the pill bottle model was satisfactory to the inventor or that it was tested sufficiently to show it would work for its intended purpose.
 
 
 46
 If we accept that Mrs. Rogers did not know what the phrase "reduction to practice" meant, that would not negate inequitable conduct. According to 37 C.F.R. Secs. 1.56(a) and (c), and all precedent, the duty of candor and good faith extends to each attorney or agent who prepares or prosecutes a patent application. 37 C.F.R. Sec. 1.56 (1992). Her attorney (not the attorney handling this litigation) admits he did not know what the facts were. Nevertheless, he prepared a misleading affidavit for Mrs. Rogers' signature containing the bald statement that the invention was reduced to practice before Pfister's filing date. As "evidence of reduction to practice," he attached a drawing stated to be prior to the filing date of the Pfister patent. The drawing shows, inter alia, L-shaped slots and engaging lugs which fit together so that the parts of the tube are "completely sealed." The drawing does not depict the ill-fitting pill bottle model. It was dissembling to so phrase the affidavit. See Paragon Podiatry Lab Inc. v. KLM Lab, 984 F.2d 1182, 25 USPQ2d 1561 (Fed.Cir.1993). His testimony that he did not know at the time of preparing the affidavit whether there had been a reduction to practice aggravates his offense. It is not an exculpating statement.
 
 
 47
 In sum, the patents are unenforceable.
 
 Attorney Fees
 
 48
 I would reverse the district court's finding that this is an exceptional case under 35 U.S.C. Sec. 285 warranting an award of reasonable attorney fees. An award of attorney fees under Sec. 285 does not necessarily flow from a finding of inequitable conduct. Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1215, 2 USPQ2d 2015, 2020 (Fed.Cir.1987) ("[I]t has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as "exceptional'."). The circumstances of this case are unusual. I accept that Mrs. Rogers did not know her affidavit was misleading to the PTO. The fault lies with her attorney, who is not before us in this litigation. While ordinarily I would have no hesitation in holding patentees liable monetarily for their attorney's misconduct, I believe it is sufficient here to hold the patents unenforceable.
 
 
 49
 I note that prosecution of the various applications was confusing. The Examiner did not cite the Pfister patent against the parent patent application, which matured into United States patent number 4,354,490. In the prosecution of the second patent application, which matured into the '146 patent, the Examiner rejected claims 1 and 2 under Sec. 102(b), and rejected other claims under Sec. 103 in view of Pfister taken with two other references. The inventor's attorney canceled claims 1 and 2, and added new claims. However, in the response he argued that the Rule 131 declaration overcame the rejections based on Pfister alone and in combination with other references. Thereafter, the Examiner allowed the amended claims based on the declarations* and a terminal disclaimer.
 
 
 50
 Section 285 does not require or contemplate that "attorneys' fees be awarded to the alleged infringer in an inequitable conduct case." J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052, 3 USPQ2d 1235, 1239 (Fed.Cir.1987). Rather, the purpose of the statute is "to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." Id. (emphasis in original; citing Rohm & Haas Co. v. Crystal Chemical Co., 736 F.2d 688, 691, 222 USPQ 97, 99 (Fed.Cir.), cert. denied, 469 U.S. 851 (1984)). As this court noted in Reactive Metals Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582, 226 USPQ 821, 824:
 
 
 51
 A finding of such "exceptional" circumstances does not, however, mandate an award of attorney fees. It is at this point that the trial court exercises its discretion in making, or not making, an award. For example, even though inequitable conduct before the PTO is found, fees may be refused to the prevailing party.
 
 
 52
 See also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201, 228 USPQ 367, 370 (Fed.Cir.1986) (concluding that an exceptional case does not require fee shifting, because many factors may contribute to a fair allocation of the burdens of litigation). Thus, I conclude that, in the unusual circumstances of this case, the court abused its discretion in awarding attorney fees of approximately $200,000 against an unknowledgeable individual in favor of a large corporation which is well able to absorb these attorney fees as a routine litigation expense.
 
 
 53
 In my view this appeal should be remanded with instructions to dismiss the case with prejudice and put an end to needless further litigation.
 
 
 
 [1]
 Specifically, claims 1 and 2 were "rejected under 35 U.S.C. 102(b) as being clearly anticipated by Pfister"; claims 3 and 4 were "rejected under 35 U.S.C. 103 as being unpatentable over Pfister in view of [another reference]."
 
 
 [2]
 37 C.F.R. Sec. 1.131
 
 
 [3]
 37 C.F.R. Sec. 1.132
 
 
 [4]
 Title 37 C.F.R. Sec. 1.131 expressly provides that a declaration of prior completion of invention is ineffective to antedate a reference used in a rejection under 35 U.S.C. Sec. 102(b)--the stated basis for the rejection of claims 1 and 2 during the prosecution of the '146 patent. In this regard, however, we note that the examiner erred in using section 102(b) as a basis for that rejection. Section 102(b) provides that an applicant is not entitled to a patent, inter alia, where "the invention was ... described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States...." (emphasis added). However, because the printed publication in this case (the Pfister patent) was issued on June 15, 1982, less than one year prior to the filing date (September 30, 1982) of the application that issued as the '146 patent, the statutory prerequisites for a section 102(b) rejection were not satisfied. It is not unlikely that the examiner intended to enter a rejection of claims 1 and 2 under 35 U.S.C. Sec. 102(e), which provides that an applicant is not entitled to a patent, inter alia, where "the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent...." Because Pfister 's filing date (April 30, 1979) was prior to the earliest possible filing date of the '146 patent (June 9, 1980), a section 102(e) rejection of claims 1 and 2 was permissible under the circumstances. In any event, the use of a Rule 131 declaration to antedate Pfister during the prosecution of the '146 patent was not precluded because the issue date of the Pfister patent was not "more than one year prior to the date on which [Rogers's '146 patent] application was filed in this country." See 37 C.F.R. Sec. 1.131
 
 
 [5]
 We have fully considered the contention that the particular procedures utilized by the district court in disposing of infringement on summary judgment violated Rogers's due process rights. However, we do not find this argument persuasive. Although the district court's procedures might be viewed as unorthodox, the record discloses that Rogers was afforded adequate opportunity to submit any written materials it wished regarding infringement before a final decision was rendered. Rogers's counsel conceded as much during oral argument
 
 
 *
 The Sec. 102(b) rejection was improper because the filing date of the application was September 30, 1982, and the issue date of Pfister was June 15, 1982. A more appropriate rejection would have been under Sec. 102(e). The Examiner must have realized his mistake, because the text of 37 C.F.R. Sec. 1.131 precludes the use of a Rule 131 declaration to antedate a reference when Sec. 102(b) is the basis of the rejection