**REFAC INTERNATIONAL, LTD. and Forward Reference Systems, Ltd., Plaintiffs–Appellants,**

v.

**LOTUS DEVELOPMENT CORPORATION, Defendant–Appellee.**

No. 95–1350.

United States Court of Appeals, Federal Circuit.

April 26, 1996.

Kenneth J. Kelly, Epstein Becker & Green, P.C., New York City, argued for plaintiffs-appellants.

Henry B. Gutman, Baker & Botts, L.L.P., New York City, argued for defendant-appellee. With him on the brief were Kerry L. Konrad, Jeffrey E. Ostrow, and Lori E. Lesser.

Before ARCHER, Chief Judge, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Refac International, Ltd. and Forward Reference Systems, Ltd. ("FRS") appeal from the judgment of the United States District Court for the Southern District of New York holding that FRS's patent is unenforceable on the ground of inequitable conduct. *REFAC Int'l, Ltd. v. Lotus Dev. Corp.*, 887 F.Supp. 539 (S.D.N.Y.1995). Because the district court did not make clearly erroneous factual findings or abuse its discretion in determining that the inventors, Rene K. Pardo and Remy Landau, engaged in inequitable conduct, we affirm.

## BACKGROUND

The patent in suit, U.S. Patent 4,398,249, concerns a method of converting a software source code program to object code. During prosecution of the '249 patent, the examiner initially rejected the application, which was filed on August 12, 1970, under 35 U.S.C. § 112, ¶ 1, on the ground of inadequate disclosure. In response, a Rule 132 affidavit by Pardo was submitted, averring that the application contained sufficient disclosure to enable any person skilled in the programming art to make and use the claimed invention. *See* 37 C.F.R. § 1.132 (1995) ("Affidavits or declarations traversing grounds of rejection."). In response, the examiner issued a final rejection, stating:

> [T]he disclosure is not deemed of the level which would enable one with ordinary skill in the art to make and use the invention. The flow diagram which applicants represent in figure 2 is not of the detailed level which a programmer would need in order to write a program from. The general outline shown in figure 2 will still have

to be broken down into fundamentals of what is necessary to write a program.

The examiner's comment on the Pardo affidavit was as follows:

> It should be pointed out that an affidavit by applicant is self serving and therefore has very little probative value in a response to an objection that the specification is inadequately disclosed. By filing an application, applicants have indicated that it fulfills the statutory requirements set out in 35 U.S.C. 112, and an objection by the Examiner that the disclosure does not meet the conditions set out there, cannot be overcome by an affidavit by an applicant that it does.

> A challenge by the Examiner should put an applicant to his proofs. A declaration by coapplicant is no more probative of the sufficiency of the disclosure than the specification as originally filed, which has been objected to.

The inventors' attorney, R. Gale Rhodes, Jr., proposed a strategy of filing affidavits from three people other than the inventors, with different experience and skill levels, attesting to the sufficiency of the disclosure. He requested that the inventors find three such people, and they recommended Peter H. Jones, a computer scientist or compiler writer; David H. Cikra, a computer programmer; and Robert F. Bullen, a supervisor of programmers. Affidavits from these three individuals were then filed, along with a Rule 116 amendment, which stated that "the present invention is directed to the computer scientist or compiler writer, not a mere programmer, and it is such compiler writer who is the man of 'ordinary skill in the art' who would practice the invention as defined by the claims." *See* 37 C.F.R. § 1.116 (1995) ("Amendments after final action.").

Each of the affidavits contained opinions or factual statements asserting the sufficiency of the application's disclosure. Bullen's affidavit stated that an average programmer could have written a computer program from the application's disclosure using programming techniques known before the application was filed. Cikra's affidavit stated that he had actually written a computer program

solely from the disclosure and had sufficiently tested the program to verify its operability. Jones's affidavit contained the following statement:

> [F]rom the written disclosures and flow chart shown in the drawing of such patent application, [I] could have produced as of August 12, 1970, and prior thereto, and using only programming techniques known on or prior to August 12, 1970, the necessary coding and could have written a detailed computer program therefrom.

In response to these affidavits, the examiner issued a notice of allowance.[1] Neither the inventors nor the affiants had disclosed to the U.S. Patent and Trademark Office ("PTO"), however, that each of the affiants had a prior association with the inventors' company, Lanpar, Ltd., or that they had pre-existing knowledge of a commercial embodiment of the invention, the LANPAR program.

After the '249 patent issued, the inventors assigned it to FRS, another company they controlled. FRS entered into an agreement with Refac, assigning it a five-percent interest in the '249 patent in exchange for Refac's obligation to sue at least two alleged infringers within one month. Refac and FRS agreed to split equally all proceeds from the litigation. On July 26, 1989, Refac sued six software publishers, including Lotus Development Corporation, alleging that their spreadsheet computer software programs infringed the '249 patent. After Refac amended its complaint to add FRS as a co-plaintiff, the action was dismissed against all defendants except Lotus. On July 29 and 30, 1993, the district court conducted a bench trial limited to Lotus's affirmative defense of inequitable conduct, and held that the patent was unenforceable on the ground of inequitable conduct, which occurred when the inventors submitted the Jones affidavit containing a material omission intended to mislead the PTO into granting the patent.

The district court carefully evaluated each of the three affidavits. The court found that the Bullen affidavit failed to disclose that Bullen had a prior association with Landau. In particular, when Bullen was a consultant with UNIVAC Canada, he had worked with Landau, who was at the time a programmer employed by Bell Canada. The court found that the Bullen affidavit also failed to disclose that Pardo and Landau had informed Bullen, before he executed his affidavit, that a computer program implementing the invention was in use at Bell Canada. The court concluded that the submission to the PTO of the Bullen affidavit with this omission did not constitute inequitable conduct. The court reasoned that Landau and Pardo had not understood that the need for an affidavit from a disinterested person might have precluded use of Bullen as an affiant, or that knowledge of Bullen's contact with Bell Canada and its relationship with Lanpar was material to consideration of the disclosures by the PTO.

The district court also found that neither the Cikra affidavit nor the Rule 116 amendment disclosed that Cikra had worked with the inventors to enable a version of the LANPAR program to operate with another software system, reviewed portions of the LANPAR program source code, and observed the program being used. The district court found that, while this omission in Cikra's affidavit presented a closer question concerning the inventors' intent than the omission in Bullen's affidavit, it still was not clear and convincing evidence of inequitable conduct. The court found that Cikra had had limited contact with the program and that, while prudence would have dictated disclosing Cikra's contact with the invention, the inventors apparently did not know, given their lack of familiarity with patent prosecution, that Cikra's involvement should have been disclosed to the PTO. The district court also found that Cikra's affidavit failed to mention that he had taken a compiler course in college and

---

1. The notice of allowance was later withdrawn following the issuance of the Supreme Court's decision in *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972). The application was then rejected under 35 U.S.C. § 101 for lack of patentable subject matter, which rejection was upheld on appeal to the Board of Appeals. The inventors appealed to the Court of Customs and Patent Appeals and successfully obtained a reversal of the board's decision. *In re Pardo*, 684 F.2d 912, 214 USPQ 673 (CCPA 1982).

had sorting program experience, but that there was no reason for the inventors or their attorney to have believed that such information was relevant to evaluation of his affidavit.

The Jones affidavit was a different matter. The district court found that neither the Jones affidavit nor the Rule 116 amendment disclosed the following facts:

 (a) Jones worked for Lanpar for not more than eight weeks in January and February 1972, less than six months prior to executing his affidavit.

 (b) While at Lanpar and prior to executing his affidavit, Jones learned internal details about the LANPAR Program and acquired an understanding of its concepts.

 (c) While at Lanpar and prior to executing his affidavit, Jones received personal instruction from Landau in the internal logic of the LANPAR Program, observed the LANPAR Program in operation, and examined source code listings, flow charts and other written explanatory materials relating to it.

 (d) While at Lanpar and prior to executing his affidavit, Jones drafted the text for what became the introduction to what was later produced as the LANPAR Program Logic Manual.

The court found that the information omitted from Jones's affidavit was material to the examiner's evaluation of the affidavit and that the inventors submitted the affidavit with an intent to mislead the PTO. The court found that Landau and Pardo had an opportunity to review Jones's affidavit, as they were sent copies of a draft and the final affidavit after it was executed. In addition, the court found that Pardo was actively involved in providing the attorney with background information regarding the three affiants, particularly Jones. The court found that "Jones's extensive experience with and knowledge of the LANPAR Program contradicted the very essence of the disinterested affidavit" and that the inventors intended to mislead the PTO by omitting that information from Jones's affidavit. The court also found that, since the examiner did not with-

draw the rejection in response to Pardo's affidavit, the inventors knew that Jones's connection with the invention would have been material:

 In light of the previous rejection of the Pardo Affidavit as "self serving," Pardo and Landau knew that a reasonable Examiner reviewing the Affidavits would conclude that the affiants were disinterested witnesses with no knowledge of the patent process, *particularly where the affiants in great detail presented their education and employment history without any mention of the affiant's connections to the patent applicants or familiarity with the patent invention.* Conversely, Pardo and Landau also knew that the PTO Examiner here would, when evaluating the Affidavits, consider it important to know whether the disinterested affiants had prior exposure to the patent process or its commercial Program. (emphasis added).

The court also considered that "the effect of the fraudulent omission in the Jones Affidavit was heightened by the omissions in the other Affidavits." The district court weighed the materiality of the omitted information with evidence of the inventors' intent and concluded that there was clear and convincing evidence of inequitable conduct. Accordingly, the court dismissed Refac's complaint. Refac now appeals.

### DISCUSSION

Refac argues that the totality of the circumstances precludes an inference of an intent to deceive the PTO. The Jones affidavit contains no affirmative misrepresentations of fact and, according to Refac, it was cumulative of the Cikra and Bullen affidavits and therefore not material. Since Jones had no financial or other interest in Lanpar or the patent application, Refac asserts that the inventors believed him to have been a disinterested party, and that the district court thus erred in its conclusion of inequitable conduct.

Lotus responds that the district court made proper credibility determinations and exercised sound discretion in its holding. Lotus argues that the inventors' attorney

instructed them to find affiants without a prior involvement with the claimed invention and that the inventors failed to inform the attorney of the affiants' prior knowledge of the LANPAR program. Even if, as Refac claims, the inventors informed the attorney of Jones's prior employment with Lanpar, Lotus argues that the patent should still be unenforceable, as the attorney was under the same duty of disclosure, which was not met.

■ A determination of inequitable conduct is committed to the district court's discretion. Accordingly, we review the court's judgment for abuse of discretion. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). To overturn a discretionary ruling of a district court, "the appellant must establish that the ruling is based on clearly erroneous findings of fact or on a misapplication or misinterpretation of applicable law, or evidences a clear error of judgment on the part of the district court." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1827 (Fed. Cir.1995).

■ Inequitable conduct consists of an "affirmative misrepresentation of a material fact, *failure to disclose material information*, or submission of false material information, coupled with an intent to deceive." *Molins*, 48 F.3d at 1178, 33 USPQ2d at 1826 (emphasis added). One alleging inequitable conduct must prove the threshold elements of materiality and intent by clear and convincing evidence. *Id.*, 48 F.3d at 1178–79, 33 USPQ2d at 1826–27. The district court must then weigh the threshold findings of materiality and intent in light of all the circumstances to determine whether they warrant a conclusion that inequitable conduct occurred. *Id.; see also Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1481–82, 1 USPQ2d 1241, 1247 (Fed.Cir.1986) ("Materiality and intent must also be considered together: the more material the omission or misrepresentation, the less intent that must be shown to reach a conclusion of inequitable conduct."), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). "Information is 'material' when there is a substantial

likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Molins*, 48 F.3d at 1179, 33 USPQ2d at 1827 (citing *In re Jerabek*, 789 F.2d 886, 890, 229 USPQ 530, 533 (Fed.Cir. 1986)); *see also LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1074, 22 USPQ2d 1025, 1031 (Fed.Cir.1992).

■ The district court complied with all these requirements. First, it did not clearly err in concluding that the Jones affidavit omitted material information. Jones had worked at Lanpar less than six months before he executed his affidavit, which recited his employment history in such detail that it even included a summer job. Jones had also worked with and reviewed documentation for the commercial embodiment of the invention, the LANPAR program. The district court noted that, although "Jones claims that the opinion he gave in his 1972 Affidavit was not influenced by the knowledge he gained while working at Lanpar," when asked how he prepared his affidavit, Jones testified that he reviewed the application's disclosure and recognized the flow chart as being essentially the same one that Landau had shown him during one of their training sessions in which Landau explained the invention to him. Jones's own testimony thus indicated that he possessed pre-existing knowledge of the invention when he prepared his affidavit. It would surely have been important for the examiner, and any reasonable examiner, to know of Jones's association with Lanpar and his pre-existing knowledge of the LANPAR program. The district court thus did not clearly err in finding this information to have been material.

■ The court also did not clearly err in concluding that the totality of circumstances supported an inference of an intent to mislead the PTO. The inventors had an opportunity to review Jones's affidavit before it was submitted to the PTO. Given what the examiner characterized as the self-serving nature of Pardo's affidavit, they were on notice from the PTO that affidavits from disinterested persons were needed in order to overcome the substantive ground of the

rejection. The inventors should therefore have known that the fact of an affiant's prior knowledge of the invention would have been important to the examiner in deciding whether to withdraw the rejection and allow the application, particularly when the examiner had no way of otherwise obtaining the omitted information about Jones's background. *See Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.,* 984 F.2d 1182, 1191, 25 USPQ2d 1561, 1568 (Fed.Cir.1993). "The inference [of an intent to mislead] arises not simply from the materiality of the affidavits, but from the affirmative acts of submitting them, their misleading character, and *the inability of the examiner to investigate the facts." Id.* (emphasis added).

■ Significantly, determining whether there was an intent to mislead the PTO involved credibility determinations. Rhodes, the inventors' attorney, testified that he inquired into Jones's prior association with the inventors and Jones's knowledge of the invention, but that the inventors did not tell him about Jones's previous employment with Lanpar or his knowledge of the LANPAR program. He also testified that, if he had had this knowledge, he would have either disclosed such information to the PTO or not used Jones as an affiant. Pardo, however, testified that his attorney knew that Jones had worked at Lanpar. In the face of this conflicting testimony, the district court determined that Rhodes's testimony was more credible than that of the inventors:

> Landau and Pardo claim they told Rhodes of Jones's employment history with them.

> I do not credit this claim. There is no reason for Rhodes to have learned about Jones's prior experience and then accepted the Jones Affidavit. If given this information, the obvious alternative, as Rhodes testified, would have been for him to ask Landau and Pardo to find someone without Jones's experience to submit an Affidavit. Thus, I conclude that Pardo and Landau purposely kept Jones's employment history from Rhodes. (citations omitted).

The district court is best suited to make credibility determinations and we accord such determinations deference. *See* Fed.

R.Civ.P. 52(a); *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."); *First Interstate Bank of Billings v. United States,* 61 F.3d 876, 882 (Fed.Cir. 1995); *Molins,* 48 F.3d at 1181, 33 USPQ2d at 1829.

The district court's credibility determination supports an inference of an intent to mislead and it is not clearly erroneous. The court was entitled to conclude that since the inventors did not inform Rhodes of Jones's association with Lanpar and Jones's knowledge of the LANPAR program, even after Rhodes inquired into the backgrounds of the affiants, withholding such information from their attorney and effectively from the PTO was intentional. In view of the examiner's response to Pardo's earlier affidavit, the inventors were on notice that Jones's pre-existing knowledge of the invention would have been important to the examiner's decision whether or not to allow the application and that not disclosing it would increase their likelihood of obtaining a patent. *See Paragon,* 984 F.2d at 1191, 25 USPQ2d at 1568 ("The natural consequence of [the applicant's] acts was to lead the examiner to believe that the affiants were 'disinterested' parties, and the patentees were successful in that effort.").

In balancing its findings of materiality and intent to arrive at a conclusion of inequitable conduct, the court also took into account its evaluation of the Bullen and Cikra affidavits, which, while not themselves constituting inequitable conduct, heightened the effect of Jones's affidavit. Given the court's thorough evaluation, we cannot conclude that it abused its discretion in deciding that inequitable conduct occurred.

Refac argues that the *Paragon* decision "illustrates how far short Lotus' proof fell from establishing conduct so inequitable that

the '249 Patent should be held unenforceable."

In *Paragon*, the examiner requested affidavits from a disinterested third party. In response, the applicant submitted to the PTO three affidavits from professionals in the field who attested to the advantages of the invention over the prior art. The affidavits contained the following statement:

I have not been in the past employed by nor do I intend in the future to become employed by Paragon Podiatry Laboratories, a corporation which I understand ·is the assignee of the interest in the above captioned patent application.

*Paragon*, 984 F.2d at 1191, 25 USPQ2d at 1568. They did not disclose that each of them held stock in Paragon, the assignee, and that one or more of them had been a paid consultant. We stated that the representation that the affiants were not employed by Paragon was a "classic example of a half truth" and that the affiants were not "disinterested." Moreover, the "gratuitous averment that each 'understood' Paragon was an assignee of the patent also implies they had no connection with their own company." *Id.* at 1192, 25 USPQ2d at 1569. We concluded that the applicant submitted the affidavits containing a material misrepresentation with the intent to mislead the PTO into granting a patent.

The rationale of *Paragon* supports affirmance of the trial court's decision. The fact that the conduct here consists of an *omission* rather than a *misrepresentation* does not compel a different result, as either may mislead an examiner. An examiner must be able to evaluate information in an affidavit in context, giving it the proper weight; both the materiality and the inference of intent arising from the omission in Jones's affidavit are enhanced by the otherwise detailed recitation of his employment history. The district court therefore did not abuse its discretion in concluding that the omission of information in Jones's affidavit relating to his status as a disinterested party was intended to mislead the PTO.

■ Refac also argues that Jones's affidavit was cumulative to Cikra's and Bullen's affidavits and that it was therefore not mate- .

rial as a matter of law. Refac relies on the following passage in *Molins* to support its argument: "If the information allegedly withheld is not as pertinent as that considered by the examiner, or is merely cumulative to that considered by the examiner, such information is not material." *Molins*, 48 F.3d at 1179, 33 USPQ2d at 1827 (citing *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582, 18 USPQ2d 1001, 1014–15 (Fed.Cir.1991)).

Lotus responds that the inventors should not be allowed to shield their inequitable conduct by arguing that the Jones affidavit was not the sole cause for allowance. Lotus states that such a policy would force an inquiry into the decision-making process of the examiner in every case in which inequitable conduct is alleged to have occurred.

The cited passage from *Molins* relates to cumulative prior art references, not to cumulative affidavits. *Molins* cited a discussion in *Scripps* that also related to cumulative references. "A reference that is simply cumulative to other references does not meet the threshold of materiality that is predicate to a holding of inequitable conduct." *Scripps*, 927 F.2d at 1582, 18 USPQ2d at 1014–15 (citing *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1440, 17 USPQ2d 1834, 1839 (Fed.Cir.1991)). The facts in *Halliburton* also involved cumulative prior art references not disclosed to the PTO. *Halliburton*, 925 F.2d at 1440, 1443, 17 USPQ2d at 1839, 1842. We decline to place submitted cumulative affidavits in the same status as unsubmitted cumulative prior art. While it is not necessary to cite cumulative prior art because it adds nothing to what is already of record (although it may be prudent to do so), one cannot excuse the submission of a misleading affidavit on the ground that it was only cumulative. Affidavits are inherently material, even if only cumulative. The affirmative act of submitting an affidavit must be construed as being intended to be relied upon. It is not comparable to omitting an unnecessary act.

■ Whether or not Jones's affidavit was cumulative to that of Cikra's and · Bullen's affidavits is also of no consequence.· . Since

any one of the affidavits from Cikra, Bullen, and Jones may have resulted in an allowance of the claims, each affidavit *ipso facto* had a certain level of materiality. *Cf. Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571, 220 USPQ 289, 300 (Fed.Cir.1983) ("In contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material."), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). Since the examiner did not allow the claims in response to the inventor's own affidavit, the inventors were on notice that the examiner would consider it important to know of the affiants' pre-existing knowledge of the invention or his connection with the inventors. An inventor cannot submit a misleading affidavit among a plurality of affidavits and later argue that it was the nonmisleading affidavit that resulted in allowance, thus effectively curing the defective affidavit.

 Refac also argues that Jones's affidavit had no probative value and therefore cannot be used to infer an intent to mislead. Refac cites section 716 of the 1972 Manual of Patent Examining Procedure ("MPEP"),[2] which reads as follows:

The following criteria are applicable to all affidavits or declarations submitted under rule 132:

. . . .

(2) Affidavits or declarations must set forth facts, not merely conclusions. The facts presented in the affidavits or declarations must be pertinent to the rejection. Otherwise, the affidavits or declarations have no probative value. (citations omitted).

Refac asserts that Jones's affidavit contained only opinion, without the factual statements required by the MPEP guideline for an affidavit to be given probative value, and that it therefore cannot be used to infer an intent to mislead. We do not agree. An affidavit submitted to overcome a rejection is intended to be relied upon. While an affiant may insist that his sworn statements were truthful or that any omissions were not material or not made with intent to deceive, these are matters of proof and credibility, on which the decision here has gone against Refac. But arguing that an affidavit submitted to persuade was defective as presenting only opinion, not fact, and that it should be discounted, qualifies only for a chutzpah award, *see Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n*, 54 F.3d 756, 763, 35 USPQ2d 1042, 1048 (Fed.Cir.1995), not a reversal. The inventors submitted the Jones affidavit to the PTO in an attempt to overcome a rejection. It was incumbent upon them to provide the PTO with sufficient information for a reasonable examiner to consider the opinion in the affidavit in context, not with a selective and misleading disclosure. The inventors failed to do that and cannot *post facto* hide behind the MPEP guidelines to argue that what they did with a purpose should be disregarded. *See Molins*, 48 F.3d at 1182, 33 USPQ2d at 1830 ("Those who are not 'up front' with the PTO run the risk that, years later, a fact-finder might conclude that they intended to deceive."); *see also Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945) (describing the public interest in seeing that patents are not procured through fraud).

The inequitable conduct found by the district court in this case did not involve what is more commonly (but often unjustifiably) asserted as inequitable conduct, *viz.*, failure to cite relevant prior art or making a material misrepresentation. Holding that the omission of an aspect of one's employment history to be inequitable conduct might thus seem to be unduly severe, a heavy penalty for an arguably minor omission. However, the district court here made findings of materiality and intent to deceive, based partly on credibility findings, and, given our standard of review, we do not consider the findings to be clearly erroneous or the conclusion to be an abuse of discretion. We cannot hold as a

---

**2.** The MPEP does not have the force and effect of law; however, it is entitled to judicial notice as the agency's official interpretation of statutes or regulations, provided that it is not in conflict with the statutes or regulations. *Molins PLC v.*

*Textron, Inc.*, 48 F.3d 1172, 1180 n. 10, 33 USPQ2d 1823, 1828 n. 10 (Fed.Cir.1995) (citing *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439, 221 USPQ 97, 107 (Fed.Cir.1984)).

matter of law that omission of a relevant part of one's employment history on an affidavit intended to show the adequacy of the patent specification to one of ordinary skill in the art, when such an affidavit by the inventor was earlier rejected, does not constitute inequitable conduct.

## CONCLUSION

The district court did not abuse its discretion in holding that the '249 patent is unenforceable on the ground of inequitable conduct.

*AFFIRMED.*