## NOVA BIOMEDICAL CORPORATION

v.

## MALLINCKRODT SENSOR SYSTEMS, INC.

Civil Action No. 94–12288–RGS.

United States District Court, D. Massachusetts.

March 11, 1998.

John J. Regan, Hale & Dorr, Boston, MA, for Nova Biomedical Corp.

Paul F. Ware, Goodwin, Procter & Hoar, Boston, MA, Richard E. Campbell, Raymond A. Kurz, George R. Repper, G. Franklin Rothwell, Steven Lieberman, Rothwell, Figg, Ernst & Kurz, PC, Washington, DC, for Mallinckrodt Sensor Systems, Inc.

### MEMORANDUM AND ORDER ON PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

Plaintiff Nova Biomedical Corporation ("Nova") alleges that two blood analyzers (the GEM Premier and the GEM Stat) marketed by defendant Mallinckrodt Sensor Systems, Inc. ("Mallinckrodt") infringe, under the doctrine of equivalents, claims 2, 3, 8, 9, 10 and 14 of Nova's method and apparatus patent for analyzing hematocrit (U.S. Patent No. 4,686,479) ("the '479 patent"). Mallinckrodt alleges inequitable conduct by Nova in its prosecution of the application for the '479 patent, specifically the withholding of relevant prior art from the United States Patent and Trademark Office ("PTO").

## FACTS

Nova is the assignee of all right, title and interest in the '479 patent, *Apparatus and Control Kit for Analyzing Blood Sample Values Including Hematocrit,* issued on August 11, 1987. Prior to applying for the '479 patent, Nova filed a 510K application for the Nova Stat Profile (the commercial embodiment of the '479 patent invention) with the United States Food and Drug Administration ("FDA").[1] In preparing the 510K application, Dr. Paul MacDonald, Nova's Director of Quality Assurance, filed a Freedom of Information Act ("FOIA") request seeking disclosure of the 510K application for the STAT-CRIT, a device manufactured by U.S. Surgical Corporation for measuring hematocrit using the conductivity method. See *Nova Biomedical Corp. v. i-STAT Corp.,* 980 F.Supp. 614 (D.Mass.1997) (discussing the technology of measuring hematocrit). On April 3, 1985, approximately three months before Nova filed the '479 patent application, MacDonald received a copy of the STAT-CRIT 510K application. The application included an informational brochure that contained the following sentence.

> Serum electrolyte levels have previously been studied and have been proven to cause predictable effects on hematocrit determinations, as stated in the information booklet, for every increase of 10mEq/1 outside normal levels, a decrease of about 1.3 HCT% will be indicated.

Selwyn Decl., at Ex. 1 (N2005132YY).

An FDA analyst telephoned MacDonald with technical questions about the Stat Pro-

---

1. A 510K application must be approved by the FDA before a company can begin marketing a regulated medical device.

file instrument. MacDonald states that he "most probably" went to Dr. Chung C. Young, Nova's chief scientist and the inventor of the Stat Profile, to obtain answers to the FDA's questions. MacDonald Dep., at 31–32. MacDonald responded to the FDA by letter dated August 1, 1985.[2] The letter included the following sentence.

> The Stat Profile 1 is substantially equivalent to the STAT–CRIT Instrument (U.S.Surgical) in its methodology of measuring Hematocrit. The method is improved on the NOVA Stat Profile 1 by an electrolyte background correction.

Lim–Epstein Decl., at Ex. 2. In filing the '479 patent application, Nova disclosed as prior art an article by R.H. Okada and H.P. Schwan entitled, *An Electrical Method to Determine Hematocrit,* and a patent, *Hematocrit Measuring Instrument,* issued to Ishihara. Nova did not identify the STAT–CRIT brochure as prior art.

Claims 1, 2, 8, and 9 of the '479 patent teach a method for determining the hematocrit value of a blood sample. Claims 10 and 14 of the patent describe an apparatus that calculates the hematocrit level in blood. Nova filed this infringement action on November 17, 1994. On March 5, 1997, after the close of fact discovery, the court allowed Mallinckrodt to amend its Answer to include an affirmative defense and counterclaim for inequitable conduct.

## DISCUSSION

### Summary Judgment Standard

"Summary judgment is as appropriate in a patent case as in any other type of case...." *Petersen Mfg. Co., Inc. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1546 (Fed.Cir.1984). Summary judgment is granted when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any. material fact, and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op. Society,* 3 F.3d 495, 497 (1st. Cir.1993). A dispute of fact is only genuine if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving

party's favor. *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28, 32 (1st Cir.1994). While all reasonable inferences must be indulged in favor of the non-moving party, *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988), a fact is considered material only when it has the "potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993).

### Inequitable Conduct

In its entirety, Mallinckrodt's affirmative defense and counterclaim reads as follows.

> The '479 Patent is unenforceable based on, inter alia, the inequitable conduct of '479 Patent inventor Chung C. Young's knowing and intentional failure to disclose a relevant prior art document (relating to the STAT–CRIT Hematocrit Measuring Instrument) to the U.S. Patent and Trademark Office during the prosecution of application which resulted in the '479 Patent. Specifically, Dr. Young was aware of the STAT–CRIT instrument and descriptive brochure prior to the filing date of the application which lead[sic] to the issuance of the '479 patent. Further, Dr. Young received prior to the filing date of the '479 patent (or within a week thereafter the STAT–CRIT 51 OK which had been requested from the FDA pursuant to a FOIA request sent to the FDA on February 26, 1985). Further Dr. Young, in connection with responding to an FDA inquiry initiated within a week of the filing of the patent application, reviewed the STAT–CRIT 510K, including highly relevant language in the STAT–CRIT brochure and, despite knowledge that this information was highly relevant prior art to the pending application, intentionally did not disclose that prior art to the Patent Office. Upon information and belief Dr. Young failed to disclose this information with the intent to deceive the Patent Office.

First Amended Answer, at 3–6.

 To prevail on its claim of inequitable conduct, Mallinckrodt must show, by clear and convincing evidence, that Dr. Young failed to disclose material information

**2.** MacDonald stated that he "probably" showed a draft of the letter to Dr. Young. Id., at 32.

with the deliberate intent to deceive the PTO.[3] *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*, 103 F.3d 1538, 1549 (Fed. Cir.1997); *B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1584 (Fed.Cir.1996); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed.Cir.1995). If Mallinckrodt successfully shoulders this initial burden, then "the court proceed[s] to the next step of weighing the threshold findings of materiality and intent in light of all the circumstances to determine whether they warrant a conclusion that inequitable conduct occurred." *Micro Chemical*, 103 F.3d at 1549. A determination of inequitable conduct is appropriate when "in light of all the particular circumstances, the conduct of the patentee is so culpable that its patent should not be enforced." *LaBounty Mfg., Inc. v. United States Intern. Trade Commission*, 958 F.2d 1066, 1070 (Fed.Cir.1992).

Mallinckrodt maintains that it has presented clear and convincing evidence that: "(1) the STAT–CRIT Instruction Manual which Nova did not disclose to the PTO is material; (2) Dr. Young knew of the pertinent material teaching from the STAT–CRIT Instruction Manual; and (3) Dr. Young intentionally withheld this material teaching from the PTO for purposes of deceiving the PTO." Mallinckrodt Memorandum, at 1.

*Knowledge and the Intent to Deceive*

■ Mallinckrodt points to Dr. Young's testimony that he was "aware of the existence of a device called STAT–CRIT that measured hematocrit by conductivity." Young Aff. ¶ 6; Young Dep., at 41–42. Mallinckrodt also points to MacDonald's testimony that: (1) he "believes" that he requested the STAT–CRIT 510K application at the request of Nova's "technical people;" (2) that Dr. Young was the person at Nova most knowledgeable about the Stat Profile; and (3) that spoke to Dr. Young or to someone who worked for him to obtain answers to the FDA's questions about the Stat Profile. Moreover, Mallinckrodt points to Mac-

Donald's response to the FDA identifying the STAT–CRIT as "substantially equivalent" to the Stat Profile 1.

Mallinckrodt next offers extracts from Dr. Young's deposition testimony, emphasizing some things that Dr. Young did *not* say.

> Dr. Young testified only that he did not "recognize" the version of the STAT–CRIT Instruction Manual that was used as a deposition exhibit. Young Dep., (Ex. 5) at 190. He did not testify that he had never seen any manual for STAT–CRIT. Dr. Young also testified only that there was no STAT–CRIT machine at Nova and that he did not know whether the STAT–CRIT instrument used a flow through or flow by sensor. Id. at 41–42 and 66. He did not testify that he had never seen a STAT–CRIT at any location or that he did not have other substantial knowledge about the STAT–CRIT. Moreover, Dr. Young has never been cross-examined about the MacDonald testimony.

Mallinckrodt Opposition, at 19 n. 10.[4]

Finally, Mallinckrodt draws significance from the fact that Dr. Young was working with Nova's patent attorneys on the drafts of the '479 patent application at the time the FOIA response regarding the STAT–CRIT 510K application was received and the Nova Stat Profile 51 OK application was filed. Mallinckrodt Opposition, at 9–11.

■ Mallinckrodt argues that this collage of suspicious circumstance would warrant a conclusion by a finder of fact that Dr. Young was aware of the STAT–CRIT brochure and deliberately concealed its contents from the PTO. While direct evidence of a patent applicant's knowledge and intent is not required (and is seldom obtainable), speculation and conjecture is not sufficient to establish a claim of deceptive conduct. *In re Hayes Microcomputer Products, Inc. Patent Litigation*, 982 F.2d 1527, 1546 (Fed.Cir. 1992); *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1416 (Fed.Cir.1987).

*Lotus Development Corp.*, 81 F.3d 1576, 1581 (Fed.Cir.1996).

---

**3.** "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Refac International, Ltd. v.*

**4.** Dr. Young's deposition was held prior to Dr. MacDonald's.

[A] finding of deceptive intent can not be based on mere inference or even on gross negligence; there must be "conduct, viewed in light of all the evidence, including evidence indicative of good faith, [that] must indicate sufficient culpability to require a finding of intent to deceive." Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.

*Hebert v. Lisle Corp.,* 99 F.3d 1109, 1116 (Fed.Cir.1996) (citation omitted). Mallinckrodt, in other words, must show something more than a general awareness on Dr. Young's part of prior art. It must show that Dr. Young knew that the prior art would have a material bearing on the PTO's consideration of the '479 patent application, and that despite that knowledge he deliberately concealed it from the PTO. Yet Mallinckrodt has offered no evidence that Dr. Young ever read the STAT–CRIT brochure, or if he did, that he recognized the supposed materiality of its allegedly instructive sentence, or that he intentionally withheld it (or caused it to be withheld) from the PTO. Dr. Young states emphatically in his affidavit that he had not seen nor read the brochure (or the 51 OK application) prior to his deposition. Young Aff. ¶¶ 6–7. While Dr. Young knew that the STAT–CRIT device existed, he testified that he understood it to be based on the conductivity method discussed in the disclosures to the PTO. Young Aff. ¶ 6.[5]

Mallinckrodt seeks to dismiss Dr. Young's affidavit as self-serving and unworthy of belief. See *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984 F.2d 1182, 1191 (Fed.Cir.1993). However, Dr. Young's affidavit offers far more than a "bare declaration of lack of intent." Moreover, contrary to Mallinckrodt's assertions, there are no material inconsistencies between Dr. Young's affidavit and his deposition testimony.

*Materiality*

■ That Nova had a duty to disclose any known relevant and material prior art to the PTO is not in question. *LaBounty Mfg.,* 958 F.2d at 1076. To establish the materiality of the STAT–CRIT brochure (assuming for present purposes that Dr. Young was in fact aware of it), Mallinckrodt relies on the opinion of its expert witness, Dr. Leslie Geddes, who states that the brochure discloses a teaching (the effect of sodium ions on the conductivity of blood), that would have been material to the PTO's examination. Lim–Epstein Decl., Ex. 12, at 5–6, 11–12.

I credit, however, the testimony of Dr. Robert Steuer (the principal inventor of the STAT–CRIT and the president of the company that was its original manufacturer) that the brochure is cumulative of information that was known to the contemporary art. See *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1582 (Fed. Cir.1991) ("A reference that is simply cumulative to other references does not meet the threshold of materiality that is predicate to a holding of inequitable conduct."). Dr. Steuer testified that, prior to his invention of the STAT–CRIT in 1975, literature in the public domain discussed measuring hematocrit by the conductivity method. Steuer Dep., at 12. The Schwan article, in particular, described how "the electrical conductance of whole blood is a very accurate index of its hematocrit." R.H. Okada and H .P. Schwan, *An Electrical Method to Determine Hematocrit,* at 885. Moreover, the Ishihara patent described "a hematocrit measuring instrument ... capable of highly accurate measurement even ... where there are variations in the concentration of the plasma electrolyte." Ishihara Patent, Col. 1, lines 6–11. Ishihara also called attention to the effects of sodium ion concentrations. Ishihara specified that "where sodium chloride is added to normal blood, the relationship between the change in the resistivity of the blood ... and the hematocrit can be expressed." Ishihara Patent, Col. 4, lines 6–9 and 22–26; Col. 6, lines 41–68. The Ishihara patent, in other words, disclosed far more of a material nature than did the STAT–CRIT brochure. Whatever one may read into the sentence in the STAT–CRIT brochure,[6] it reveals nothing not al-

---

**5.** Dr. Young further stated that he "did not know anything else about the STAT–CRIT. I never saw one. I never studied one. I never had possession of one." Id.

**6.** Dr. Geddes, Mallinckrodt's expert, conceded that the sentence contains several inaccuracies. See Nova Memorandum, at 17–18.

ready known to the art and disclosed to the PTO.

Mallinckrodt, in other words, has failed to come forward with any clear and convincing evidence that the STAT–CRIT brochure was material prior art that should have been disclosed by Dr. Young in his application for the '479 patent. Mallinckrodt has also failed to produce any evidence that Dr. Young intentionally and deceptively withheld the STAT–CRIT brochure from the PTO, or that he even knew of its existence. In other words, no trialworthy issue has been shown. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### ORDER

For the foregoing reasons, Nova's Motion to Dismiss Mallinckrodt's Affirmative Defense and Counterclaim of Inequitable Conduct is *ALLOWED.*

SO ORDERED.